# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IGHADARO AGHATISE, Individually and on behalf of all others similarly situated, § § § | |
| *Plaintiff,* § | Civil Action No. 4:24-cv-102 |
| v. § | Judge Mazzant |
| § | |
| ROYAL GUARDS SOLUTION LLC, § § | |
| *Defendant.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Opposed Motion for § 216(b) Certification and Notice to the Putative Collective Members (Dkt. #8). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

### I.  Factual Background

This is a proposed collective action to recover overtime wages and liquidated damages under the Fair Labor Standards Act of 1938 ("FLSA"). Plaintiff Ighadaro Aghatise brings this action individually and behalf of all others similarly situated (collectively, "Plaintiff and the Putative Collective Members")[1] who worked for Defendant Royal Guards Solution LLC ("Royal Guards") at any time in the three years preceding the filing of the Complaint through the final disposition of this dispute (Dkt. #1).

---

[1] More specifically, the Complaint defines the "FLSA Collective Members" as "[a]ll current and former security guards who worked for Royal Guards Solution LLC, anywhere in the United States, at any time from February 6, 2021, through the final disposition of this matter" (Dkt. #1 at ¶ 43).

Plaintiff and the Putative Collective Members are current and former security guards employed at Royal Guards, a Texas limited liability company that provides private security services to corporate clients throughout Texas (Dkt. #1 at ¶¶ 13, 19). While each employee's "exact job titles may differ," Plaintiff and the Putative Collective Members were individually and collectively responsible for providing security services to Royal Guards' clients (Dkt. #1 at ¶¶ 21–23). Each were also subject to the same allegedly illegal pay practices during their employment (Dkt. #1 at ¶¶ 21–23). Specifically, Plaintiff and the Putative Collective Members accuse Royal Guards of violating its statutory duty to pay its employees overtime at one and one-half times the regular rate of pay under the FLSA (Dkt. #1 at ¶ 24). Plaintiff and the Putative Collective Members allege to have worked between fifty and sixty hours per week, on average (Dkt. #1 at ¶ 26). According to the Complaint, Royal Guards maintained an established practice of paying its employees only their regular rate of pay, despite their hours exceeding the forty-hour threshold (Dkt. #1 at ¶ 5). In other words, Royal Guards did not pay its employees overtime. Thus, the Complaint seeks to recover unpaid overtime wages for all hours worked in excess of forty hours per week (Dkt. #1 at ¶ 29).

**II.    Procedural Background**

In response to Royal Guards' alleged FLSA violations, Plaintiff brought his Original Collective Action Complaint on February 6, 2024 (Dkt. #1). Through it, Plaintiff and the Putative Collective Members seek to recover unpaid back wages, civil penalties, and liquidated damages equal to the unpaid compensation owed to Plaintiff and the Putative Collective Members (Dkt. #1 at pp. 11–12). On September 12, 2024, Plaintiff filed his Opposed Motion for § 216(b) Certification and Notice to the Putative Collective Members (Dkt. #8). Royal Guards responded in opposition on September 26, 2024 (Dkt. #9). On October 4, 2024, Plaintiff replied (Dkt. #10).

**LEGAL STANDARD**

The FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) imposes liability on employers for violations of § 207 and authorizes employees to bring an action for an employer's failure to pay overtime. The FLSA permits employees to bring an overtime action individually or, alternatively, as a collective action on behalf of a group of "similarly situated" employees. *Id.* § 216(b). However, neither § 216(b) nor Fifth Circuit precedent explicitly defines "similarly situated." *See id.* Accordingly, it is up to the district court to define the contours of the term "similarly situated" as it determines who may be included in a collective action.

Unlike a class action under Federal Rule of Civil Procedure 23, which generally requires potential plaintiffs to *opt out* if they do not wish to be represented in the lawsuit, a collective action under § 216(b) requires potential plaintiffs to affirmatively *opt into* the lawsuit. *Swales v. KLLM Transp. Servs., L.L.C.* 985 F.3d 430, 435 (5th Cir. 2021). "Under § 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011). Historically, courts in the Fifth Circuit have conditionally certified a collective by adhering to a two-step approach outlined in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Under the first stage of *Lusardi*, the plaintiff "bears the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists." *Tice*, 826 F. Supp. 2d at 995 (citing *Mims v. Carrier Corp.*, No. 2:06-cv-206, 2008 WL 906335, at *3 (E.D. Tex. March 31, 2008)). To carry this burden, "a plaintiff need only show that [its] position[] [is] similar to the potential plaintiffs,

not identical." *Allen v. McWane, Inc.*, No. 2:06-cv-158 (TJW), 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). The court must "satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Id.*

The first step under *Lusardi* "usually occurs early in the case." *Tice*, 826 F. Supp. 2d at 995 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). Therefore, the determination of conditional certification "is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan." *Id.* Stage two of *Lusardi* takes place after discovery. If, after discovery, a defendant can show the plaintiffs are not, in fact, similarly situated, it can move to "decertify" the collective action. *Lusardi*, 118 F.R.D. 351.

Yet the Fifth Circuit uses a different standard now. In 2021, the Fifth Circuit issued its opinion in *Swales*, which changed the conditional certification analysis. 985 F.3d at 441. In *Swales*, the Fifth Circuit rejected the traditional two-step *Lusardi* approach to collective action certification and created a more stringent process. *Id.* In contrast to the flexibility offered by *Lusardi*, in *Swales*, the Fifth Circuit directs district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* After identifying the relevant material facts and legal considerations, the district court "should authorize preliminary discovery accordingly." *Id.*

In determining whether notice should be provided to those "similarly situated" employees, the district court must ultimately decide whether "merits questions can be answered collectively." *Id.* at 442. This requires a court to consider "all of the available evidence to determine whether notice is going out to the putative class members," and the determination must be made as early

as possible in the span of litigation. *Id.* at 441–42. Given this fact-intensive approach, the conclusion will vary case-by-case. *Id.* at 441.

Potential plaintiffs should be notified if the available evidence establishes that the plaintiff has carried its burden to meet the threshold "similarly situated" standard. *See id.* at 443. A plaintiff can meet this threshold at varying stages of discovery; for instance, "notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Id.* at 441. Other times, if an employee seeks to certify a class where "plaintiffs have demonstrably different work experiences," a district court might "need more discovery to determine whether notice is going out to those 'similarly situated.'" *Id.* at 442. In the latter situation, a district court may: (1) "conclude that the Plaintiffs and Opt-ins are too diverse a group" to support a collective action; (2) "decide that [the Court] needs further discovery to make [a] determination"; or (3) "find that only certain subcategories of" employees "should receive notice." *Id.* at 443. In any case, to prevent the collective action from "quickly devolv[ing] into a cacophony of individual actions," *Swales* instructs the district court that potential plaintiffs are not similarly situated if answering threshold merits questions requires a "highly individualized inquiry into each potential opt-in's circumstances." *Id.* at 442.

Under this newly articulated standard, "*Lusardi* and its requirements are dead and gone." *Collins v. Pel-State Bulk Plant, LLC*, No. MO20CV00083, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021). "The bottom line is that the district court has broad, litigation-management discretion" when determining whether to "certify" a collective action. *Id.*

# ANALYSIS

## I.  Similarity Situated

The instant Motion asks the Court to certify the FLSA collective action on behalf of Royal Guards' current and former security guards who were denied overtime pay (Dkt. #8 at pp. 1–2). Plaintiff seeks authorization to send notice to "[a]ll current and former security guards who worked for Royal Guards Solution LLC, anywhere in the United States, at any time from September 12, 2021, through the final disposition of this matter" (Dkt. #8 at p. 1). In support, Plaintiff claims that:

> Plaintiff and the Putative Collective Members are or were employees of [Royal Guards], performed similar (if not identical) job duties, were compensated in the same or similar manner, were subject to the same unlawful compensation policy—that is, they were denied overtime compensation regardless of the number of hours they worked each workweek, regularly worked more than forty (40) hours a week, and all suffered a common injury as a result of Defendant's company-wide violation of the FLSA.

(Dkt. #8 at p. 2). Based on these allegations, Plaintiff asserts that he and the Putative Collective Members are "similarly situated" such that the Court may certify the action (Dkt. #8 at p. 2). Royal Guards disagrees. In opposition, it points to the factual differences between the Putative Collective Members and the different defenses available to Royal Guards that it contends would require individual analysis for each Putative Collective Member (Dkt. #9 at pp. 2–7). Plaintiff's argument is more persuasive.

In determining whether Plaintiff and the Putative Collective Members are similarly situated, the Court focuses on their "employment situations." *Swales*, 985 F.3d at 441. Evidence of a similar job description coupled with allegations that revolve around the same aspect of the job is sufficient to find that putative collective action members are similarly situated. *Lopez-Gonzalez v. Ramos*, No. 2:20-CV-061-Z, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021) ("[C]ourts have

required plaintiffs to provide evidence that potential opt-in plaintiffs had (1) similar job requirements and (2) similar pay provisions to support the allegation that potential opt-in plaintiffs are similarly situated."). In making this determination, the Fifth Circuit has directed that the Court must "consider all of the available evidence" and "rigorously scrutinize the realm of 'similarly situated' workers" by identifying, at the outset of the case, "what facts and legal considerations will be material" for this determination. *Swales*, 985 F.3d at 434, 441–42. "[T]o determine whether the plaintiffs and the potential collective-action members are similarly situated in their employment settings, courts typically examine whether they had similar job requirements and similar pay provisions." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) LLC*, No. 4:21-CV-00124, 2022 WL 2119542, at *8 (E.D. Tex. June 13, 2022) (citing *Fuller v. Jumpstar Enters., LLC*, No. H-20-1027, 2021 WL 5771935, at *4 (S.D. Tex. Dec. 6, 2021) (internal quotations omitted)). Finally, the Court will look to see whether Plaintiff has established a "factual nexus that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries." *Id.* (internal citations omitted).

The Court turns to the evidence Plaintiff submits in support of his "similarly situated" claim. In his Motion for Certification, Plaintiff contends that he and the Putative Collective Members are similarly situated because "the class members performed similar work, were subjected to similar employment conditions, were similarly paid for their work, were treated the same by [Royal Guards], and the allegations that they are owed overtime wages revolve around the same illegal policy" (Dkt. #8 at p. 7). In support, Plaintiff attached the following evidence as exhibits:

1. Declaration of Ighodaro Aghatise (Dkt. #8-1);
2. Royal Guards Solution Security Officers Job Description (Dkt. #8-2);
3. Transcript of Anthony Onyemordi's (the owner of Royal Guards) Deposition (Dkt. #8-3);
4. Royal Guards Security Contract (Dkt. #8-4);
5. Pay Stubs from May 30, 2022 to May 3, 2024 (Dkt. #8-5); and
6. Defendant's Response and Objections to Plaintiff's First Set of Interrogatories (Dkt. #8-6).

Applying the *Swales* principles, the Court holds that Plaintiff and the Putative Collective Members are similarly situated such that certification and notice to the Putative Collective Members is proper. As alleged, the evidence above establishes that each security guard has the same general job description, which includes "[p]atrolling," "[m]onitoring," "[i]nspecting," "[c]ontrolling access," "[r]esponding," "[r]eporting," and "[a]ssisting" (Dkt. #8-2). Plaintiff and the Putative Collective Members all signed the same employment contract, which provides for payment at different rates, but otherwise includes the same terms, including the denial of overtime pay (Dkt. #8-4). Finally, the pay stubs reflect that Plaintiff and each Putative Collective Member were paid a flat rate with no overtime (Dkt. #8-5). Royal Guards disputes neither of these premises. These factual allegations alone are sufficient for the Court to hold that the Plaintiff and the Putative Collective Members share a "similarly situated" employment circumstance such that certification and notice is proper. *See Garcia-Alvarez*, 2022 WL 2119542, at *5 (noting that "the similarly situated determination is not an opportunity for courts to assess the merits of the claim by deciding factual disputes or making credibility determinations").

Royal Guards' arguments to the contrary are not persuasive and do not change the Court's holding, nor do they meaningfully present an alternative ground for the Court's "similarly

situated" analysis. To Royal Guards, its employees cannot be similarly situated because "different clients want [Royal Guards security guards] to do different things for them" (Dkt. #9 at p. 2) (citing Dkt. #9-1 at p. 2). The Royal Guards job description explains that "[e]mployees may be required to carry out some or all of these duties depending on the client's post-order requirements in a particular location" (Dkt. #8-2). That argument is misguided. Whatever differences might exist between Royal Guards' employees' responsibilities from job to job is negligible at best (*See, e.g.*, Dkt. #9-1 at p. 2) (explaining that some jobs require parking lot patrol, while others require the security guard to be stationed at a door to check people in). In fact, by Royal Guards' owner's admission, the only differences in employee duties from job to job is that some security guards are armed and some are not, and the guards work different hours (Dkt. #8-3 at p. 24). Finally, Royal Guards argues that the defenses available to it require an individual analysis by Plaintiff and, thus, certification would be improper (Dkt. #9 at p. 6). Royal Guards' arguments are not persuasive.

In "consider[ing] all of the evidence," the minor differences that Royal Guards identified are not sufficient to undermine a finding that Plaintiff and the Putative Collective Members are similarly situated. *See Swales*, 985 F.3d at 442. And with fewer than thirteen employees (Dkt. #8-3 at p. 3) and a strong factual nexus between their claims, "hearing the claims in one proceeding [would be] fair to all parties and [would] not result in an unmanageable trial of individualized inquiries." *See Garcia-Alvarez*, 2022 WL 2119542, at *8; *see also Owen v. Golf & Tennis Pro Shop, Inc.*, No. 4:09-CV-00571, 2010 WL 3859640, at *3 (E.D. Tex. Sept. 30, 2010), *motion for relief from judgment granted*, No. 409CV00571, 2010 WL 3941842 (E.D. Tex. Oct. 7, 2010) ("While the potential class here would be small, unlike class actions under Rule 23 of the [Federal Rules of Civil Procedure], numerosity is not a requirement for collective action under § 216(b).")). Thus, Royal

Guards' argument that Plaintiff and the Putative Collective Members are not similarly situated fails. *See Swales*, 985 F.3d at 436.

Next, the Court assesses Royal Guards' arguments related to its available defenses. In support of its argument that its available defenses are sufficiently individualized to preclude certification, Royal Guards cites to a Western District of Texas case which analyzed the application of the "fluctuating workweek," a method of calculating damages (Dkt. #9 at p. 6) (citing *In re Texas EZPawn Fair Lab. Standards Act Litig.*, 633 F. Supp. 2d 395, 398 (W.D. Tex. 2008)). According to Royal Guards, performing that damages analysis requires an individualized inquiry into each Putative Collective Member (Dkt. #9 at p. 6). So, the argument goes, because "it's up to [each employee] to agree to the terms [of the contract] or not," analyzing the proper amount of damages for each employee requires individual analysis and, thus, certification is improper (Dkt. #9 at pp. 6–7). That argument is unavailing. That the Court may have to separately calculate damages for each Putative Collective Member does not constitute a difference sufficient for the Court to deny certification. The Court is capable of performing that minor, individualized inquiry given the relatively small size of the class. In any event, exploring the relative strength of Royal Guards' affirmative defenses would require the Court to venture into the merits, which would be improper at this early stage. *See, e.g.*, *Torres v. Chambers Protective Servs.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *10 (N.D. Tex. Aug. 5, 2021) ("Nothing in *Swales* indicates or encourages courts to circumvent the notice analysis and move directly to the merits."). For now, the question is only whether "the merits of the proposed collective's case can be decided collectively"—not whether a plaintiff "will ultimately prevail in proving all the elements of the alleged FLSA violation." *Garcia-Alvarez*, 2022 WL 2119542, at *5; *Sterling v. Greater Hous. Transp. Co.*, No. CV H-20-910,

2021 WL 2954663, at *2 (S.D. Tex. July 14, 2021). At this stage, the Court is satisfied that the merits of Plaintiff and the Putative Collective Members' case can be decided collectively. *See Sterling*, 2021 WL 2954663, at *2. Accordingly, certification and notice to the Putative Collective Members is appropriate.

## II.     Proposed Notice to the Putative Collective Members

Having determined that Plaintiff and the Putative Collective Members are similarly situated such that certification is appropriate, the Court turns to the next question: the proper form and scope of notification. The Court begins with form. The Supreme Court has recognized that a trial court has a "substantial interest in communications that are mailed for single actions involving multiple parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Accordingly, it is well within the purview of the Court to monitor the preparation and distribution of a notice sent to putative class members, and to "ensure that it is timely, accurate, and informative." *Id.* at 172. In exercising its discretionary authority over the notice-giving process, however, "courts must be scrupulous to respect judicial neutrality . . . and must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Courts "have seen fit to modify, or even dictate, the form and content of a notice sent to putative class members." *Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *7 (S.D. Tex. June 29, 2021).

Here, Plaintiff has submitted a proposed Notice and Consent Form to be sent to the Putative Collective Members (Dkt. #8-7). Plaintiff requests a sixty-day opt-in period from the date that the notices are initially distributed (Dkt. #8-7 n.1). As to the form of the notice, Plaintiff requests that they be sent via first class mail, e-mail, and text message (Dkt. #8 at p. 12). Plaintiff also requests permission to send a follow-up reminder notice via e-mail and text message thirty

days after the initial notice is sent to those Putative Collective Members who have not opted into the case (Dkt. #8 at p. 14). To effectuate their requested notice, Plaintiff asks the Court to order Royal Guards to produce to Plaintiff's counsel all of the Putative Collective Members' names, addresses, telephone numbers, and e-mail addresses, but did not specify a time period for Royal Guards to comply (Dkt. #8 at p. 14). Royal Guards does not object to any of Plaintiff's notice requests (*See* Dkt. #9). Accordingly, the Court approves Plaintiff's proposed Notice and Consent Form (Dkt. #8-7).

Finally, the Court must determine the appropriate notice period. Section 255 generally provides a two-year statute of limitations, but it extends the period to three years for a cause of action arising out of a willful violation of the FLSA. *See* 29 U.S.C. § 255. While the parties do not dispute the applicable notice period, Plaintiff's Motion for Certification and accompanying Notice and Consent Form each seek permission to issue notice to a class of potential plaintiffs dating back to September 12, 2021 (Dkt. #8 at p. 1; Dkt. #8-7 at p. 1). Plaintiff's Complaint, however, seeks to reach back to February 6, 2021 (Dkt. #1 at ¶ 43).

To reach back three years to the period that Plaintiff requests, Plaintiff must demonstrate willfulness. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State. Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). To do so, "a plaintiff must demonstrate that an employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988)). "Negligence does not constitute willfulness and unreasonableness does not 'necessarily constitute a willful violation.'" *Ramos*, 2021 WL 3192171, at *7 (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)).

"Prior to *Swales*, an allegation of willfulness was sufficient at the notice stage to warrant notice covering the prior three years." *Young v. Energy Drilling Co.*, 534 F. Supp. 3d 720, 725 (S.D. Tex. 2021). Post-*Swales*, courts have repeatedly found an allegation of willfulness sufficient to warrant the FLSA's three-year statute of limitations period. *Id.*; *Torres*, 2021 WL 3419705, at *11 n.10. Indeed, in *Young*, the district court noted that it "sees no reason to delay notice pending discovery on willfulness in a case such as this where the same evidence of willfulness will apply to all similarly situated potential plaintiffs who receive notice." 534 F. Supp. at 725. The same is true here. While Plaintiff's Motion makes no mention of willfulness (*See* Dkt. #8), his Complaint does (Dkt. #1 at ¶¶ 41, 52, 62). Thus, though his Motion for Certification does not present an argument to support his claim, Plaintiff has sufficiently alleged willfulness to warrant notice covering the prior three years. Further, the Court finds that the three-year limitations period should be measured from the date this Court issues notice by approving the revised notice form, rather than the date Plaintiff's Complaint was filed. *Garcia-Alvarez*, 2022 WL 2119542, at *16 (citing *Ramos v. Capitan Corp.*, No. MO:16-CV-00075, 2016 WL 8674617, at *5 (W.D. Tex. May 18, 2016)).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Opposed Motion for § 216(b) Certification and Notice to the Putative Collective Members (Dkt. #8) is hereby **GRANTED in part, subject to the modifications in this Order**.

It is further **ORDERED** that Royal Guards must provide Plaintiff with the names of all individuals to whom the Court has authorized Plaintiff to provide notice to, their last known mailing addresses, email addresses, and phone numbers is a computer-readable data file within fourteen (14) days of this Order.

It is further **ORDERED** that Plaintiff is permitted to send its proposed notice by first-class mail, e-mail, and text message.

It is further **ORDERED** that Plaintiff is authorized to send the same notice as a reminder notice thirty (30) days after the original mailing.

It is further **ORDERED** that all individuals whose names appear on the list produced by Royal Guards' counsel have sixty (60) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff.

**IT IS SO ORDERED.**

SIGNED this 31st day of March, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE